ROBERT WISNIEWSKI P.C.
17 State Street, Suite 820
New York, New York 10004
(212) 267-2101
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
ALEC BLADE :

Plaintiff, :

-against- :

GAMESTOP INC., GAMESTOP OF NEW YORK, RHONDA WATSON, and JULIAN ESPINOZA
:
Defendant.
------------------------------------------------------------X

**Docket No.:**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Alec Blade ("Plaintiff"), by and through his attorneys, Robert Wisniewski P.C., as and for his Complaint against Defendants GameStop Inc., and GameStop of New York (collectively "Corporate Defendants"), Rhonda Watson ("Watson"), and Julian Espinoza ("Espinoza") (collectively "Individual Defendants"), states as follows:

## NATURE OF THE ACTION

1. Plaintiff was discriminated against in the terms and conditions of his employment by the Corporate Defendants on the basis of sex and sexual orientation. In addition, Plaintiff was terminated by the Corporate Defendants in retaliation for making protected complaints against Corporate Defendants and its employees.

2. Plaintiff brings this action against the Corporate Defendants for discrimination and a hostile work environment based on sex, and retaliation, including but not limited to, termination

of Plaintiff's employment for his opposition to said discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").

3. Plaintiff also asserts claims against all Defendants under the New York Executive Law § 296 ("NYSHRL") and the New York City Charter and Administrative Code § 8-107 ("NYCHRL") for discrimination and hostile work environment based on sex and for retaliation, including but not limited to, termination of Plaintiff's employment for his opposition to said discrimination and hostile work environment.

**PARTIES, JURISDICTION, AND VENUE**

4. At all relevant times herein, Plaintiff, a X year old homosexual man, was and still is a resident of the state of New York, Kings County.

5. At all relevant times, GameStop Inc. is and has been a foreign business corporation with principal address located at 625 Westport Parkway, Grapevine, Texas 76051, and is authorized to do business in the State of New York.

6. At all relevant times, GameStop of New York is and has been a foreign business corporation with principal address located at 16 Madison Square West, 12th Floor, New York, NY 10010.

7. At all times herein, Corporate Defendants transacted and still transacts substantial business and derived and still derives substantial revenue from services rendered in the State of New York.

8. At all relevant times, Corporate Defendants employed five hundred (500) or more employees, and thus, was Plaintiff's "employer" within the meaning of that term in Title VII, NYSHRL, and NYCHRL.

9. Plaintiff was employed by the Corporate Defendants on or around May 14, 2025,

as a seasonal worker. Plaintiff was later promoted to associate and keyholder and transferred to one of GameStop's Flatbush locations which later closed. Following the store's closure, Plaintiff was then transferred to Corporate Defendants' Brooklyn location, located at 34 Graham Avenue, Brooklyn, NY 11206 in or around December 2025, where he remained until his retaliatory termination on or around March 21, 2026.

10. Individual Defendant is an officer, shareholder, manager, and/or employee of Corporate Defendants.

11. At all relevant times, Individual Defendant had supervisory authority over employees, including Plaintiff, with respect to hiring, disciplining, scheduling, evaluating, promoting, and terminating employment.

12. This Court has subject-matter jurisdiction over Plaintiff's claims arising under Title VII pursuant to 28 U.S.C. §§ 1331 because this action arises under the laws of the United States

13. This Court has supplemental jurisdiction over Plaintiff's claims arising under the NYSHRL and NYCHRL pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

14. This Court has personal jurisdiction over the Corporate Defendants pursuant to CPLR 302(a), New York's long arm statute.

15. This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. §1391(b), because substantial events relating to the claims herein occurred in this district.

## PREREQUISITES

16. Plaintiff has filed charges of discrimination against the Defendants with the Equal Employment Opportunity Commission ("EEOC") and has received a Notice of the Right to Sue

(the "Right to Sue Letter").

## TRIAL BY JURY

17. Plaintiff demands a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

### *Discrimination and Hostile Work Environment*

18. Corporate Defendants are "the world's largest retail gaming and trade-in destination for Xbox, PlayStation, and Nintendo games, systems, consoles & accessories." *See* https:// https://www.gamestop.com (last accessed August 3, 2026). The Corporate Defendants are a privately-owned master telecommunications agency with hundreds of retail locations across the country, including New York. Corporate Defendants operates over 2,200 physical stores globally with at least ten (10) located across the five boroughs of New York.

19. At all times herein, Individual Defendant acted for and on behalf of Corporate Defendants with the power and authority vested in her as an officer, agent, and employee of Corporate Defendants, and has acted in the course and scope of their duty and function as the District Manager.

20. Plaintiff was duly qualified for his position as an associate and keyholder for the Corporate Defendants. On many occasions, Plaintiff had to work ten (10) hour shifts without a break and even off the clock when Corporate Defendants were understaffed. Corporate Defendants relied significantly on Plaintiff who did not receive any disciplinary warnings or write-ups while employed.

21. Plaintiff reported to his manager, Jennifer Snyder ("Snyder"), and the District Manager, Rhonda Watson ("Watson"), while employed at the Corporate Defendants' Brooklyn location. Watson exercised supervisory authority over employees within the district, including

Plaintiff, with respect to hiring, disciplining, scheduling, evaluating, promoting, and terminating employment.

22. Following his transfer to Brooklyn, Plaintiff met Julian Espinoza ("Espinoza"). Plaintiff informed Espinoza that he was interested in getting to know him more personally, but Espinoza responded that he was not gay. Plaintiff immediately ceased contact and did not show any further interest.

23. In or around early February 2026, Espinoza began to inform customers and managers that he wanted to beat the Plaintiff up. One of Plaintiff's friends overheard Julian threaten the Plaintiff in this manner and informed the Plaintiff who reported the conduct to Snyder and Watson and filed a report with Human Resources.

24. For weeks, Espinoza continued to threaten and speak maliciously about the Plaintiff. Espinoza repeatedly commented on Plaintiff's sexual orientation, stating "that gay this" and "this gay that," in a derogatory manner to antagonize Plaintiff. Espinoza also continued to threaten harming Plaintiff or having someone harm Plaintiff. Espinoza's harassment of Plaintiff extended to false accusations of mishandling a friend pro account to coworkers and customers, as well as false accusations that Plaintiff bad-mouthed Espinoza on the app, Grindr. Espinoza's pattern of harassment created a hostile work environment fueled by gossip and threatening behavior.

25. On or about February 12, 2026, Snyder disproved Espinoza's accusations regarding Plaintiff changing his friend pro account. The transactions in Espinoza's account were all under his employee number and occurred on dates that Plaintiff did not work the same shift, or at all.

26. On or about February 17, 2026, Plaintiff showed the texts revealed his Grindr texts to Snyder to prove that he had never mentioned Espinoza. Such false accusations were made to

damage Plaintiff's reputation and get him fired by Watson, who was close friends with Espinoza and consistently defended him.

27. On or about February 19, 2026, Plaintiff overheard Espinoza shout "I don't want to work with [Plaintiff]" while on the phone with a friend visiting the store. Plaintiff's friend approached Espinoza to ask who he was referring to and why he was mad to which Espinoza responded that "he doesn't fuck with [Plaintiff]" and that he was going to "beat [Plaintiff's] ass the next day." Espinoza also stated he "got people to jump [Plaintiff] in two months" and "will try to get Plaintiff fired because he is tired if [him]."

28. On or about the end of February, Plaintiff encountered Shelly Pabos, Espinoza's close friend at work, when she requested that Plaintiff ask Espinoza if he was mad at her because she didn't want to ask him. Plaintiff informed Shelly that he did not want to be involved in between her and Espinoza. On this same day, Espinoza kept contacting Plaintiff to ask how to trade broken controllers for value, despite his obvious disdain for Plaintiff, to avoid speaking to Pabos. When Plaintiff informed Espinoza that he was improperly running the trade controllers through POS as opposed to Tech Trade which meant that customers would receive more money for the trade then the actual cost, Espinoza responded that he didn't care. Being forced between Espinoza and Pabos despite the documented conflict with Espinoza further distressed Plaintiff and contributed to a hostile work environment during his employment.

29. In or around early March 2026, Plaintiff learned from Snyder that Espinoza had been falsely accusing him of harassment and inappropriate workplace conduct. Snyder inquired whether Plaintiff had every hit on Espinoza, whether Plaintiff informed coworkers and/or customers that Espinoza was gay, whether Plaintiff had changed Espinoza's friend pro account phone number, and whether Plaintiff had ever bad-mouthed Espinoza on Grindr. Despite Snyder

disapproving that Plaintiff had changed Espinoza's friend pro account and Plaintiff proving he had not mentioned Espinoza in his dating communications, Snyder still asked Plaintiff accusatory questions based on Espinoza's false claims.

30. Plaintiff truthfully informed Snyder that he had shown interest in Espinoza on only one occasion after Espinoza shared with Plaintiff that he was paid to have sex with a husband and wife. As a result, Plaintiff reasonably believed Espinoza may be interested in men. Espinoza shared this story with Stephanie Adams ("Adams"), who Espinoza had previously shown interest in, and Snyder, who advised him that the story was inappropriate for work and not to discuss it again.

31. Plaintiff also informed Snyder that Espinoza lied about Plaintiff informing coworkers and/or customers that he was gay. Prior to Plaintiff's transfer to Corporate Defendants' Brooklyn location, Espinoza was frequently referred to as "gay" by customers. Following Plaintiff's transfer, a customer stated, "[I] don't like the gay guy who looks like he likes little boys," and when Snyder asked the customer whether they were referring to Plaintiff, the customer responded, "the one with the piercings in his mouth," referring to Espinoza. Plaintiff informed Snyder he had no part in how customers perceived Espinoza as they had referred to him as "gay" prior to Plaintiff working with him.

32. On or about March 2, 2026, Human Resources Investigator Diana LNU contacted Plaintiff about his complaint. She advised him that there was an active investigation ongoing and to not mention it to coworkers or customers at the store. She also advised Plaintiff to ignore Espinoza and that she would get back to him.

33. On or about March 20, 2026, Espinoza was terminated due to "workplace violence" with Snyder serving as a witness to his threats against Plaintiff. After his termination, Espinoza cursed Plaintiff out for allegedly getting him fired.

34. On or about March 21, 2026, Plaintiff was terminated for allegedly sexually harassing Espinoza via text messages. During the termination meeting, the reason for Plaintiff's termination shifted between sexual harassment and disorderly conduct without evidence for either allegation. Plaintiff vehemently denied the false accusations, but Corporate Defendants followed through with his termination and promised to send all documentation related to Plaintiff's termination to him by March 23, 2026. To date, Plaintiff has not received any such paperwork.

35. Following his termination, Plaintiff texted Watson to ask why he was being terminated when she had knowledge that Espinoza's allegations were false. Watson responded, "you people are always so problematic and dramatic. Move on and live with your sin. You are no longer part of GameStop, so I don't care. Just go away and get right with God." From these statements, Plaintiff reasonably understood that Watson was making derogatory remarks regarding his sexuality and the LGBTQ community as a whole. Her response supports Plaintiff's claim that his termination was retaliation for his complaints about sex-based discrimination and harassment as a result of Plaintiff's sexual orientation.

36. In taking, or failing to take, action, Defendants acted with malice, reckless and callous indifference to federal, state, and local anti-discrimination laws, which it knew, or should have known of, and, through its course of conduct, caused Plaintiff to suffer emotional injuries.

37. Defendants discriminated against Plaintiff based on his sex, and specifically his sexual orientation, and by creating a hostile work environment and directly discriminating against him.

38. Defendants used alleged sexual harassment and/or disorderly conduct against Plaintiff as a pretext to terminate his employment, even though he had never been previously warned or disciplined for either allegation.

39. As a result of Defendants' unlawful discriminatory acts against Plaintiff, he has suffered, and will likely continue to suffer, significant economic consequences, including lost back and front wages, loss of self-esteem, as well as physical, mental, and/or emotional distress.

40. As a result of Defendants' unlawful discriminatory acts against Plaintiff, he has suffered and continues to suffer impairment and damage to his good name and reputation.

41. As a result of the Defendants' unlawful discriminatory acts against Plaintiff, he has suffered and continues to suffer severe and lasting embarrassment, humiliation, and anguish, and other incidental and consequential damages and expenses.

42. Defendants' unlawful, discriminatory, and harassing acts against Plaintiff were intentional and in violation of Title VII, NYSHRL, and NYCHRL.

***GameStop Inc., and GameStop of New York are an Unified Operation.***

43. GameStop Inc., is the parent company of GameStop of New York, its wholly-owned subsidiary.

44. Corporate Defendants have maintained control, oversight, and direction over Plaintiff including with regards to hiring, scheduling, supervising, and terminating Plaintiff's employment.

45. Upon information and belief, both Defendants apply the same employment practices, and procedures to all of hourly employees in their operation, including policies, practices, and procedures.

46. GameStop Inc., owns or dominates GameStop of New York through its high-level corporate officers.

47. GameStop Inc., and GameStop of New York engage in related activities, namely the business of selling video games, consumer electronics, and other gaming merchandise.

48. At all relevant times, GameStop Inc., and GameStop of New York have been

owned, managed, and controlled by the same individuals or entities.

49. At all relevant times, GameStop Inc., and GameStop of New York have shared corporate officers, managers, supervisors, employees, administrative employees, bookkeeping and accounting services, as well as other costs of doing business.

50. GameStop Inc., and GameStop of New York are owned, managed, and controlled by the same individuals or entities, are operating as a unified operation, and each provides mutually supportive services to the substantial advantage of the other such that each entity is operationally interdependent on each other and, therefore, GameStop Inc., and GameStop of New York must be treated as a single enterprise.

51. In the alternative, as a matter of economic reality, GameStop Inc., and GameStop of New York are joint employers of Plaintiffs and, as a result, GameStop Inc., and GameStop of New York are individually and collectively, and jointly and severally, liable for all claims made herein.

**<u>FIRST CLAIM FOR RELIEF</u>**
**Discrimination And Hostile Work Environment Under Title VII Against the Corporate Defendants**

52. Plaintiff repeats and realleges each and every allegation previously set forth.

53. When employed by the Corporate Defendants, Plaintiff was an employee within the meaning of Section 2000e(f) of Title VII

54. The Corporate Defendants were an employer within the meaning of Section 2000(e)(b) of Title VII.

55. Section 2000e-2(a) of Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex."

56. The Corporate Defendants, through its respective owners, directors, officers, managers, and employees, engaged in discrimination based on sex sufficient to alter the terms and conditions of Plaintiff's employment.

57. The Corporate Defendants discriminated against Plaintiff by treating her differently and less favorably than its straight employees based on Plaintiff's sex and sexual orientation by subjecting him, among other things, to a hostile work environment, disparate working conditions, and discriminatory termination of employment solely because of his sex and sexual orientation in violation of Section 2000e-2(a) of Title VII.

58. The Corporate Defendants also unlawfully discriminated against Plaintiff on the basis of his sex and sexual orientation by fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent or to remedy a hostile work environment.

59. By virtue of the acts complained of herein, the hostile work environment at Corporate Defendants was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a subjectively and objectively abusive/discriminatory work environment.

60. The Corporate Defendants are liable for the discrimination and hostile work environment against Plaintiff because it was created and fostered by its owners, directors, officers, managers, and/or because the Corporate Defendants did not take adequate steps to prevent or address instances of said discrimination and hostile work environment.

61. As a direct and proximate result of the discrimination and hostile work environment complained of herein, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering, and interest thereon.

62. Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs

because the Corporate Defendants' unlawful and discriminatory actions constitute malicious, willful, and wanton violations of Title VII.

**SECOND CLAIM FOR RELIEF**
**Retaliation Under Title VII Against the Corporate Defendants**

63. Plaintiff repeats and realleges each and every allegation previously set forth.

64. The Corporate Defendants retaliated against Plaintiff by, inter alia, (i) subjecting Plaintiff to materially adverse actions that would deter a reasonable employee from engaging in protected activity for his opposition to, and complaint against, the Corporate Defendants' discriminatory practices; (ii) failing to stop and prevent the discriminatory conduct towards Plaintiff by employees of the Corporate Defendants; and (iii) terminating Plaintiff's employment after he opposed discriminatory practices by an employee of the Corporate Defendants. Such retaliation was inflicted subsequent to, and in direct connection with, Plaintiff's complaint of sex discrimination.

65. As a direct and proximate result of Corporate Defendants' retaliatory conduct, Plaintiff suffered, and continues to suffer, damages including but not limited to lost income, mental anguish, and pain and suffering, and interest thereon.

66. Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because the Corporate Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of Title VII.

**THIRD CLAIM FOR RELIEF**
**Discrimination and Hostile Work Environment Under**
**The New York State Human Rights Law Against All Defendants**

67. Plaintiff repeats and realleges each and every allegation previously set forth.

68. NYSHRL § 296(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer ..., because of an individual's age, sex, race, color, [or] national origin ... to

refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

69. Defendants discriminated against Plaintiff by treating her differently and less favorably than their straight, male employees based on his sex and sexual orientation by subjecting her, among other things, to disparate working conditions and compensation, and discriminatory termination of his employment solely because of sex in violation of Section 296(1) of NYSHRL.

70. Defendants also unlawfully discriminated against Plaintiff on the basis of his sex by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment.

71. By virtue of the acts complained of herein, the discrimination and hostile work environment at the Corporate Defendants was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create a subjectively and objectively abusive/discriminatory work environment.

72. Said discrimination and hostile work environment occurred with malice and reckless disregard of Plaintiff's rights.

73. Section 296(6) provides that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."

74. Defendants engaged in unlawful discriminatory practices in violation of the NYSHRL § 296 (6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory conduct.

75. As a result of Defendants' discrimination and hostile work environment, Plaintiff

suffered, and continues to suffer, damages including but not limited to lost income, mental anguish, and pain and suffering.

76. Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because the Corporate Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 296 of the NYSHRL.

## FOURTH CLAIM FOR RELIEF
### Discrimination and Hostile Work Environment Under The New York City Human Rights Law Against All Defendants

77. Plaintiff repeats and realleges each and every allegation previously set forth.

78. The New York Administrative Code § 8-107(1) provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, sex, race, color, [or] national origin... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

79. Defendants discriminated against Plaintiff by treating him differently and less favorably than their straight, male employees based on his sex and sexual orientation by subjecting him, among other things, to disparate working conditions, discriminatory disciplinary procedures, and discriminatory termination of his employment solely because of her sex in violation of New York Administrative Code § 8-107(1).

80. Defendants also unlawfully discriminated against Plaintiff on the basis of his sex by fostering, condoning, accepting, ratifying, and/or otherwise failing to prevent or to remedy a hostile work environment.

81. By virtue of the acts complained of herein, the discrimination and hostile work environment at the Corporate Defendants was sufficiently severe and pervasive to alter the terms

and conditions of Plaintiff's employment and create a subjectively and objectively abusive/discriminatory work environment.

82. Said discrimination and hostile work environment occurred with malice and reckless disregard of Plaintiff's rights.

83. The New York Administrative Code § 8-107(6) provides that, "It shall be an unlawful discriminatory practice: For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

84. Defendants engaged and continue to engage in an unlawful discriminatory practice in violation of the New York City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory conduct of its employee.

85. As a result of the Defendants' discrimination and hostile work environment, Plaintiff suffered, and continues to suffer, damages including but not limited to lost income, mental anguish, and pain and suffering.

86. Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because the Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of Section 8-107.

**FIFTH CLAIM FOR RELIEF**
**Retaliation Under the New York State Human Rights Law Against All Defendants**

87. Plaintiff repeats and realleges each and every allegation previously set forth,

88. Defendants retaliated against Plaintiff by, inter alia, (i) subjecting Plaintiff to materially adverse actions that would deter a reasonable employee from engaging in protected activity for her opposition to, and complaint against, the Defendants' discriminatory practices; (ii) failing to stop and prevent the discriminatory conduct towards Plaintiff by Defendants; and (iii) terminating Plaintiff's employment after she opposed discriminatory practices by Defendants.

Such retaliation was inflicted subsequent to, and in direct connection with, Plaintiff's complaint of sex discrimination.

89. Defendants engaged and continue to engage in unlawful discriminatory practices in violation of the NYHRL § 296 (6) by aiding, abetting, inciting, compelling, and coercing the above retaliatory conduct.

90. As a result of the retaliatory conduct complained of herein, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, mental anguish, and pain and suffering, and interest thereon.

91. Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of New York Human Rights Law.

## SIXTH CLAIM FOR RELIEF

### Retaliation Under the New York City Human Rights Law Against All Defendants

92. Plaintiff repeats and realleges each and every allegation previously set forth.

93. Defendants retaliated against Plaintiff by, inter alia, (i) subjecting Plaintiff to materially adverse actions that would deter a reasonable employee from engaging in protected activity for his opposition to, and complaint against, the Defendants' discriminatory practices; (ii) failing to stop and prevent the discriminatory conduct towards Plaintiff by Defendants; and (iii) terminating Plaintiff's employment after he opposed discriminatory practices by Defendants. Such retaliation was inflicted subsequent to, and in direct connection with, Plaintiff's complaint of sex discrimination.

94. Defendants engaged in unlawful discriminatory practices in violation of the NYCHRL § 8-107(6) by aiding, abetting, inciting, compelling, and coercing the above retaliatory conduct.

95. As a result of the retaliatory conduct complained of herein, Plaintiff suffered, and continues to suffer, damages including but not limited to lost income, mental anguish, pain and suffering, and interest thereon.

96. Plaintiff is also entitled to an award of punitive damages, attorney's fees, and costs because the Corporate Defendants' unlawful and retaliatory actions constitute malicious, willful, and wanton violations of NYCHRL.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiff demands a trial by jury and judgment against all Defendants as follows:

A. A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B. An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all monetary and/or economic damages;

C. An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for their mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D. An award of damages to be determined at trial, plus pre-judgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

E. An award of punitive damages;

F. An award of liquidated damages;

G. An award of costs and disbursements that Plaintiff has incurred in this action, as well as Plaintiff's attorneys' fees to the fullest extent permitted by law;

H. Plaintiff's reinstatement to her position at the Corporate Defendants; and

[no more text on this page]

I. Together with such other and further relief that the Court deems just and proper.

Dated: New York, NY
October 8, 2026

ROBERT WISNIEWSKI P.C.

By: */s/Robert Wisniewski*
Robert Wisniewski
*Attorneys for Plaintiffs*
17 State Street, Suite 820
New York, NY 10005
Tel.: (212) 267-2101
Email: rw@rwapc.com